UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HALEESHA WILLIAMS,

       Plaintiff,                    CIVIL ACTION NO. 12-14622

       v.                            DISTRICT JUDGE LAWRENCE P. ZATKOFF

                                         MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 12, 14)**

Plaintiff Haleesha Williams challenges the Commissioner of Social Security's ("the Commissioner") final denial of her eligibility for continuing disability benefits. Cross motions for summary judgment are pending (Dkt. Nos. 12, 14); Plaintiff also filed a reply (Dkt. No. 15). Judge Lawrence P. Zatkoff referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

**I.    RECOMMENDATION**

Because the Administrative Law Judge ("ALJ") did not err in his assessment of the VE's testimony, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.   DISCUSSION**

   *A.  Framework for Disability Termination*

Under standards governing the disability termination, a claimant bears a "continuing burden" to show that he is disabled. *Matthews v. Eldridge*, 424 U.S. 319, 336 (1976). The termination standard requires substantial evidence that: (1) there has been medical improvement in the claimant's impairment(s) (other than medical improvement that is not related to the claimant's ability to work); and, (2) the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f). The Commissioner's regulations set forth a seven-step sequential analysis for terminating SSI benefits based on medical improvement when a claimant has not been performing substantial gainful activity:

> Step One: If the recipient is not currently engaged in substantial gainful activity, and the recipient has an impairment or combination of impairments that meets or medically equals one of the impairments listed in the regulations, disability will be continued.
>
> Step Two: If there has been medical improvement in the recipient's impairments, the analysis proceeds to step three. If there has been no medical improvement in her impairments, the analysis proceeds to step four. Medical improvement is any decrease in medical severity of the impairment or combination of impairments as established by improvement in symptoms, signs and/or laboratory findings.
>
> Step Three: If there has been medical improvement, and it has been related to the recipient's ability to do work, the analysis proceeds to step five. If the medical improvement is unrelated to the recipient's ability to do work, the analysis proceeds to step four. Medical improvement is related to the ability to work if it results in an increase in the recipient's capacity to perform basic work activities.
>
> Step Four: If there is no medical improvement, or if the improvement is unrelated to the recipient's ability to do work, the ALJ must then ask whether one of the exceptions to medical improvement in 20 C.F.R. §§ 416.994 (b)(3) or (b)(4) nevertheless applies. If no exception applies, disability will continue; if an exception listed in the first group applies, then analysis proceeds to Step Five;

and, if an exception listed in the second group applies, then disability will be terminated.

Step Five: If recipient's impairments are severe in combination – in that they limit the recipient's ability to do basic work activities – then the analysis proceeds to step six. If the impairments are not severe in combination, then disability will be terminated.

Step Six: If the recipient's impairments are severe, the SSA will assess the recipient's residual functional capacity and consider whether she can perform past relevant work. If the recipient can perform her past relevant work, then disability will be terminated. If she cannot, then analysis proceeds to step seven.

Step Seven: If the recipient cannot perform past relevant work, the SSA will consider whether the recipient can do other work given her residual functional capacity, age, education, and past work experience. If so, disability will be terminated. If, however, the recipient cannot perform other work, her disability continues.

20 C.F.R. § 416.994.

### B. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)). There is no presumption of continuing disability. *See Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

**III. REPORT**

*A. Administrative Proceedings*

Plaintiff received disability benefits for 16 years (since she was 11 years old). She was previously found to be disabled as a result of childhood asthma with an effective onset date of April 1, 1993 (Tr. 22, 83). In a July 3, 2000 determination, the Commissioner found that Plaintiff's disability had continued (Tr. 22). However, in the most recent review of Plaintiff's eligibility, the Commissioner determined that, as of June 1, 2009, she was no longer disabled (*Id.*); the determination was upheld after a hearing conducted by a Disability Hearing Officer (Tr. 106-113). The hearing officer, in concluding that medical improvement had occurred since the comparison point decision ("CPD"), found that Plaintiff's asthma was better controlled with medication, the frequency and intensity of her attacks had diminished, and she had not required steroid treatment (Tr. 110).

Plaintiff then appeared with counsel for a hearing before ALJ John J. Rabaut, who considered the case *de novo* (Tr. 22). In a written decision, ALJ Rabuat found Plaintiff's disability had not continued (Tr. 22-31). Plaintiff requested an Appeals Council review (Tr. 17-18). On August 14, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-6).

*B. ALJ Findings*

Plaintiff has no past relevant work, a high school education, and was 27 years old on the date of her hearing (Tr. 30). The ALJ first noted that the most recent favorable medical decision finding that Plaintiff continued to be disabled – or, the CPD – was the July 3, 2000 determination (Tr. 23).

The ALJ then applied the seven-step disability analysis to Plaintiff's claim and found at step one that, as of June 1, 2009, Plaintiff had the following medically determinable impairments: asthma, sinusitis, hypertension, gastroesophageal reflux disease, depressive disorder, panic disorder, and obesity (Tr. 24). But, since June 1, 2009, Plaintiff had not had an impairment or combination of impairments which met or medically equaled one of the listings in the regulations (Tr. 24).

At step two, the ALJ found that medical improvement occurred as of June 1, 2009 (Tr. 25-26).

At step three, the ALJ found Plaintiff's medical improvement to be related to the ability to work (Tr. 26).

Because of the ALJ's findings at step two, step four was bypassed; at step five, the ALJ found that, beginning on June 1, 2009, Plaintiff continued to have a severe impairment or combination of impairments (*Id.*).

Between steps five and six, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to:

> Perform light work[1] . . . except [Plaintiff] can lift up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk for about

---

[1] Light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

>   [six] hours in an [eight]-hour workday, with normal breaks. [Plaintiff] cannot climb ladders, ropes, or scaffolds; and can occasionally climb ramps/stairs, balance, stoop, crouch, kneel, and crawl. [Plaintiff] should avoid even moderate exposure to extreme cold; heat; wetness; humidity; exposure to environmental irritants such as fumes, odors, dusts, and gases; and exposure to poorly ventilated areas. [Plaintiff] should avoid concentrated exposure to use of moving machinery and all exposure to unprotected heights. [Plaintiff] is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple work-related decisions; and with few, if any, workplace changes. [Plaintiff] can have only occasional interaction with the public and coworkers, and no tandem tasks.

(Tr. 26).

At step six, the ALJ noted that Plaintiff has no past relevant work (Tr. 30).

At step seven, the ALJ found Plaintiff was no longer disabled, because, as of June 1, 2009, she could perform a significant number of jobs in the national economy (*Id.*).

### C. Administrative Record

#### 1. Plaintiff's Hearing Testimony and Statements[2]

Plaintiff completed high school, though she struggled; she has never worked (Tr. 42, 45). Plaintiff currently lives in a house with her mother, brother, and seven year-old daughter (Tr. 44-45).

Plaintiff has been treated for asthma, sinus problems, high blood pressure, depression, and anxiety (Tr. 46-47). When asked to describe the general symptoms that prevent her from

---

20 C.F.R. § 404.1567.

[2] Plaintiff's testimony before the ALJ reflects her subjective view of her medical condition, abilities, and limitations; it is not a factual finding of the ALJ or this Magistrate Judge.

being able to work, Plaintiff explained that "it's just a constant struggle," both emotionally and physically (Tr. 47).

Emotionally, Plaintiff stated "[i]t's just like everything's [] dark around me – [] everywhere I go it's just black – [] I just can't get focused like I want. It's just – I'm just dreading to do stuff. It's just like – oh my God – [] every day is like this – [] a hopeless thing" (Tr. 47-48). Physically, Plaintiff continues to have problems breathing: every day, she experiences shortness of breath or feels very sharp pains that force her to sit down for a few minutes; the pain usually returns within an hour (Tr. 48-49). Smoke, dust, pollutants, and extreme temperatures – especially very hot weather – aggravate her condition; anxiety also contributes to Plaintiff's problems (*Id.*, Tr. 52). When asked whether she thought she was getting better or worse, Plaintiff stated that she just takes it "one day at a time" (Tr. 52).

Plaintiff regularly takes medicine for her asthma, including Albuterol, Advair daily, and Flovent twice a day (Tr. 50-51). She also uses a machine for Albuterol treatments twice a week, for approximately 15 minutes at a time; she feels jittery for twenty minutes after her treatments and needs to lie down (Tr. 51, 65). She sometimes uses her machine in the morning, and sometimes at night (Tr. 52, 65-66). Plaintiff also takes Trazodone (sleeping pill), Effexor,[3] and blood pressure medication (Tr. 56). She has frequent headaches and does not find her sleeping pill particularly helpful – she does not like taking it; she sleeps five hours a night (Tr. 58).

Plaintiff described her attacks: she feels as though her heart is going to burst from her chest; she can hear it going and going, and feels scared (Tr. 66). She is not always sure whether

---

[3] "[Effexor] is used to treat depression[,] . . . general anxiety disorder (GAD), social anxiety disorder (SAD), and panic disorder. [Effexor] belongs to a group of medicines known as serotonin and norepinephrine reuptake inhibitors (SNRI). These medicines are thought to work by increasing the activity of the chemical called serotonin in the brain." *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012623/ (last accessed January 11, 2014).

these attacks are her asthma acting up or a panic attack (*Id.*). But when it happens, she first reaches for her inhaler to see if that will work; she tries to take a deep breath, sit down, and relax (Tr. 66-67). Plaintiff cries until someone sits down with her, talks to her, and pulls her out of it (Tr. 67). She cannot be alone (*Id.*).

Plaintiff estimates that she has this kind of panic or asthma attack four to five times a week, most often at night when she tries to go to sleep (Tr. 68-69). Plaintiff cannot get out of her mind, for instance, the time she went to the emergency room with heart rate problems and was told she was going to have cardiac arrest (Tr. 69). She thinks of this often, fearful that, when she feels her heart racing, she will have to go back to the hospital (Tr. 70). How often these thoughts develop into an attack depends on the circumstances – such as whether she is being asked to do something she cannot do – but she estimates experiencing panic attacks, which leave her feeling jittery, nervous, and unable to breathe, approximately three times a day (Tr. 70-71). Plaintiff also experiences crying spells out of the blue almost every day; she does not know why it happens (Tr. 67).

The last time that Plaintiff went to the hospital for breathing problems was her 2007 visit to the emergency room (Tr. 53-54). However, she goes to urgent care once or twice a month; the last time she was in urgent care was approximately one month ago (Tr. 54-55).

Plaintiff has approximately ten good days every month; the rest are bad days where she cannot even get out of bed (Tr. 53). Plaintiff is able to take care of her personal needs, clean her room, clean up after her daughter, and get her daughter up and ready for school, but her brothers or mother drive her daughter to school (Tr. 58-60, 64). Plaintiff has a driver's license, but when she drives, she panics: the last time she drove, she had to pull to the side of the road and wait for someone to pick her up (Tr. 60).

On a typical day, Plaintiff takes her medicine, sits down and talks to her brother; watches television; listens to music; and, helps her daughter with her homework (Tr. 61-63). Her brother might also fix her something to eat – he is generally home with Plaintiff throughout the day (Tr. 61-63). Plaintiff does not shop much (the last time she went was a few weeks ago), and when she does, she gets what she needs and then sits down (Tr. 63)

### 2.     Vocational Expert Testimony

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age and education – with no past work experience – who could perform light work with the following limitations: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; and, occasional balancing, stooping, crouching, kneeling, and crawling (Tr. 74). The individual must avoid concentrated exposure to extreme cold, heat, wetness and humidity, environmental irritants (*e.g.*, fumes, odors, dusts, and gases), and poorly ventilated areas; concentrated use of moving machinery; and, any exposure to unprotected heights (*Id.*). The individual would be limited to work that is simple, routine, and repetitive in task; performed in a work environment free of fast-paced production; and, involves only simple work-related decisions with few, if any, workplace changes and occasional interaction with the general public and coworkers (Tr. 74-75).

The VE testified that such an individual could perform work in the national and regional economy as a file clerk, mail room clerk, and hand packer (Tr. 75-76). The VE added that his testimony would not change were the ALJ to reduce the environmental irritants component of his hypothetical (Tr. 76).

The ALJ next added that the individual would instead be limited to sedentary work, with the same limitations enumerated in his initial hypothetical (*Id*.). The VE testified that the individual could perform work as a surveillance system monitor, an assembler, and a product inspector (Tr. 76-77).

The ALJ presented another limitation: at either the light or sedentary exertional level, the individual – due to a medical condition – could not engage in regular, sustained work activity for a full eight-hour workday, five days a week – or an equivalent schedule – because the individual would be missing more than one unscheduled day a month or requiring more than one unscheduled partial day (i.e., having to arrive late, having to leave work early, or requiring extended breaks throughout the day) (Tr. 77). The VE testified that such an individual would be precluded from work (Tr. 77-78).

The ALJ next asked the VE to assume that the individual, even if able to be at work, would be unable to maintain concentration, persistence, or pace sufficient to be on task for 85 to 90 percent of the time (Tr. 78). The VE testified that the individual would be precluded from work (*Id*.).

### D.  *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ's failure to make findings regarding the frequency of her "attacks" and crying spells – including their impact on Plaintiff's ability to work on a regular and continuing basis – precludes meaningful substantial evidence review (Dkt. No. 12 at p. 10).[4] More specifically, she asserts error in the ALJ's failure to (1) mention the VE's testimony that employers allow employees to be off task no more than 85 to 90 percent of the time, and incur no

---

[4] All page numbers refer to CM/ECF pagination.

more than one absence per month; and, (2) make findings regarding Plaintiff's ability to meet those demands.

Plaintiff bears the burden to establish a prima facie case of disability. *Peebles v. Chater*, 85 F.3d 629 (6th Cir. 1996). However, once a claimant makes out a prima facie case of disability, the burden then shifts to the Commissioner to show that Plaintiff has the capacity to perform work in the national economy. *Id*. This burden must be met with a finding supported by substantial evidence. *Parley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). A case involving the termination of disability benefits "turns on whether substantial evidence shows that (1) there has been medical improvement in [claimant's] impairment (other than improvement which is not related to her ability to work), and (2) she now has the ability to engage in substantial gainful activity." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (citing 42 U.S.C. § 423(f)(1)).

Substantial evidence may be shown through reliance on a VE's testimony in response to a hypothetical question, as long as the question accurately describes Plaintiff's physical and mental impairments, and takes Plaintiff's limitations into account. *Parley*, 820 F.2d at 779-80. The hypothetical question need not incorporate limitations the ALJ does not find credible. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993). And, "[c]redibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ." *Strevy v. Comm'r of Soc. Sec.*, No. 1:12–cv–634, 2013 WL 54472803, at *8 (W.D. Mich. Sept. 30, 2013) (citing *Gooch v. Sec'y of HHS*, 833 F.2d 589, 592 (6th Cir. 1987)).

Plaintiff asserts that the ALJ was obligated to discuss the pertinent employers' – as testified to by the VE – minimum attendance and on-task requirements, and, accordingly, Plaintiff's ability to meet those requirements. The exchange at issue went as follows:

> Q: Okay. Now at either the light or the sedentary – if due to a medical condition the individual is not going to be able to engage in regular, sustained work activity . . . due to the fact that the individual would be missing more than one unscheduled day a month or requiring more than one unscheduled partial day – like having to arrive late or having to leave work early – the reason being irrelevant – you know, it could be a panic attack or whatever – or not even being able to show up at work – but so either a full unscheduled day off – more than one unscheduled full day off or more than one unscheduled partial day – again – arriving late, leaving early, requiring extended breaks throughout the day – would that eliminate the jobs you've given me?
>
> A: Yes sir.
>
> Q: Okay. Would there be any competitive employment for this individual?
>
> A: No sir.
>
> Q: Okay. So basically this is just not a full-time, competitive [RFC].
>
> A: I agree with that.
>
> Q: Okay. Conversely – even if the person was at work but due to a medical condition would be unable to maintain sufficient concentration or persistence or pace to perform these jobs – again – would that also preclude the full-time work activity?
>
> A: Yes, your honor.
>
> * * *
>
> Q: What's the general on task – is there a general on task type percentage or no?
>
> A: . . . Most employers want you on task at least . . . 85 to 90 percent.
>
> Q: Okay. And so if you're under that in your experience that's just not going to be – you might be able to get the job but you wouldn't be able to keep it.
>
> A: Would not keep it. Yes sir.

(Tr. 78-79). As Defendant also notes, the question at issue here is best framed as whether the

ALJ's RFC, with respect to Plaintiff's "attacks" and crying spells, is supported by substantial evidence.[5]

With respect to Plaintiff's complaints of frequent "attacks" and crying spells – the source of Plaintiff's alleged need to be absent and off task to an extent that would preclude work – the ALJ recounted Plaintiff's testimony briefly, but accurately (Tr. 27). He then conducted a thorough review of the medical evidence related to Plaintiff's mental impairments, including opinion evidence.

The ALJ afforded significant weight to the June 1, 2009 consultative exam findings of Atul C. Shah, M.D., who opined that Plaintiff could understand, retain, and follow simple instructions, but should be restricted to performing repetitive and concrete, tangible tasks because of her depression (Tr. 29, 440). Notably, Plaintiff reported to Dr. Shah that she was experiencing panic attacks three to four times a week, or three to four times a month, and felt better once she took her medication and relaxed (Tr. 438).

The majority of medical source opinions related to Plaintiff's physical capabilities likewise found her able to perform work on a sustained, continuous basis. The ALJ afforded significant weight to the May 2, 2009 opinion of E. Montasir, M.D., who completed a consultative medical assessment for the state DDS (Tr. 28). He noted that Plaintiff reported frequent panic attacks and asthma attacks one to two times a month, but opined that she could work indoors for eight-hours a day with various postural and exertional limitations that largely reflect the ALJ's ultimate RFC (Tr. 28, 426-27). The ALJ afforded some weight to the October 30, 2009 physical RFC assessment of Delois D. Daniels, M.D., which noted frequent panic

---

[5] Before stating that she "vehemently disagrees" with the ALJ's conclusions at step seven, Plaintiff noted that at step seven, "the ALJ found that Plaintiff has the [RFC] to perform a significant number of jobs that exist in the national economy" (Dkt. No. 12 at p. 9 (CM/ECF)).

attacks; she concluded that Plaintiff could perform light activity (Tr. 28, 504). The ALJ afforded limited weight to the August 31, 2009 consultative exam findings of Atul C. Shah, M.D., who concluded that Plaintiff had moderate to severe restrictions for occupational ability because of her asthma, and retained the functional capacity to work two to four hours with exertional limitations; Dr. Shah's evaluation does not indicate that Plaintiff reported panic attacks (Tr. 28, 477-78).

The ALJ further noted that he found the conclusions of the June 13, 2009 state agency psychiatric review completed by Daniel Blake, Ph.D., to be consistent with the record as a whole (Tr. 24). Dr. Blake opined that Plaintiff had some moderate limitations – including in concentration, persistence, and pace – and noted that she was undergoing no mental health treatment, but ultimately concluded that she retained mental functions sufficient for sustained work activity (Tr. 441-43). Accordingly, the ALJ found Plaintiff to have moderate difficulties in concentration, persistence, and pace (Tr. 25).

The ALJ also mentioned relevant medical evidence. On January 28, 2011, Plaintiff had reported to Jan Taliga, M.D., that she experienced minimally changed anxiety symptoms after a November 2010 change in her medication (Tr. 29, 519). But, she admitted that she had not been taking her medication as prescribed (Tr. 29, 515-20).

The ALJ then summarized his findings:

> In sum, the medical records and the testimony of [Plaintiff] describing her limitations demonstrate that such limitations will not interfere with the ability of the claimant to function independently, appropriately, effectively, and on a sustained basis. I have considered the claimant's allegations and have found them inconsistent with the objective medical findings in the record. [Plaintiff]'s testimony is not well supported by the objective medical evidence in the record and therefore not entitled to significant weight.

(Tr. 30).

-15-

Meanwhile, Plaintiff points to no record evidence – including her own testimony – that the ALJ failed to address or analyze properly; nor does she contest the ALJ's credibility determination.[6] The ALJ's finding that Plaintiff was capable of performing sustained, continuous work is consistent with the ultimate conclusions of the opining sources on record in light of the weight he afforded to each; Plaintiff does not contest the ALJ's weight of medical opinion evidence. Of note, for example, is the ALJ's affordance of significant weight to Dr. Shah's June 1, 2009 opinion, which found Plaintiff capable of sustained full time employment despite her reports of panic attacks as often as three to four times a week (Tr. 29, 438). Moreover, not one opining source found Plaintiff to have any more than moderate mental limitations, or noted that she required breaks or absences outside of those normally permitted by employers.

Nevertheless, Plaintiff claims that the ALJ's failure to expressly address Plaintiff's ability to meet employers' minimum attendance and on-task requirements precludes review of the ALJ's decision, in violation of pertinent SSA regulations. *See, e.g.*, 5 U.S.C. § 557(c)(3)(A); 20 C.F.R. § 416.1453 (directing the ALJ to "issue a written decision which gives the findings of fact and the reasons for the decision"); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("Importantly, an ALJ must include a discussion of 'findings and conclusions, and the reasons or basis therefor[e], on all the material issues of fact, law, or discretion presented on the record.' The reasons requirement is both a procedural and substantive requirement, necessary in order to facilitate effective and meaningful judicial review." (quoting 5 U.S.C. § 557(c)(3)(A))). She relies heavily on authority finding reversible error where the ALJ failed to explain at step

---

[6] And to the extent that Plaintiff purports to argue error in the ALJ's credibility determination, the attempt should be waived: she substantiates no such argument with legal authority or clear elaboration. *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

three (or, as it would have been here, at step one) why he found a claimant's impairments insufficient to meet or medically equal a listed impairment. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328 (E.D. Mich. June 18, 2012); *Lugo v. Chater*, 932 F. Supp. 497, 501 (S.D.N.Y. 1996).

As support for the specific requirement that an ALJ must expressly state his rationale for disregarding a portion of the VE's testimony, Plaintiff points to a decision from the U.S. District Court for the District of Utah. *See Hendrix v. Barnhart*, 313 F. Supp. 2d 1222, 1232 (D. Utah 2004). In *Hendrix*, the court found error where, after the VE testified – in response to the ALJ's hypothetical – that work would be precluded for an individual who, because of fatigue, pain, and headaches, would be unable to meet the pertinent employers' minimum attendance requirements, the ALJ failed to "address or weigh the [VE]'s opinion." *Id*. In making this finding, however, the court then emphasized that the claimant's inability to work because of chronic absenteeism due to fatigue, pain, and headache was corroborated by two of the claimant's physicians. *Id.* at 1225, 1232.

Here, no such corroborating opinion was rendered. Moreover, "[a] VE does not determine what restrictions a claimant had. 'Rather, it is the ALJ's function to first determine what medical restriction[s] a claimant was under and how they affected his residual functional capacity, and then to determine whether the [VE] had identified a significant number of jobs in a relevant market given these restrictions.'" *Peebles*, 85 F.3d at 629 (citing *Maziarz v. Secretary of Health and Human Servs.,* 837 F.2d 240, 247 (6th Cir.1987).

Plaintiff's general point is fair: while a crucial component of this Court's review involves enacting a careful analysis of whether the ALJ's decision is supported by substantial evidence, review must also ensure that the ALJ applied the appropriate legal standards. "The judiciary can

scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored." *Brown v. Bowen*, 794 F.2d 703, 708 (D.C.Cir.1986)). This Magistrate Judge recognizes why it might be disconcerting for a claimant – who previously received disability benefits and testified to having ten good days in a month and multiple "attacks" or crying spells in a week – to have an ALJ seemingly imply to the VE that she would require, at the very least, one partial absence a month, but not expressly discuss that hypothetical question in his written decision. However, the ALJ's decision contains sufficient reference to Plaintiff's complaints of attacks and crying spells to assure this Magistrate Judge that the ALJ did not ignore these subjective complaints.[7] *Id*. His decision should not be disturbed on appeal.

## IV.  CONCLUSION

Because the ALJ did not err in his assessment of the VE's testimony, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report

---

[7] Because Plaintiff fails to indicate any specific evidence, this Magistrate Judge surmises that Plaintiff's entire proposition is based on her subjective complaints.

and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                        s/Mark A. Randon
                                        Mark A. Randon
                                        United States Magistrate Judge

Dated: January 13, 2014

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 13, 2014, by electronic and/or ordinary mail.

                                        *s/Eddrey Butts*
                                        *Case Manager for Magistrate Judge Mark A. Randon*